**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO: 1:25-cv-25578-BB

ALLAN TEH,

     Plaintiff,

v.

LEE MELCHIONNI, individually,
SYLVIA BENITO, individually,
JUSTICE PARTNERS MANAGEMENT, a
Delaware Limited Liability Company,
JUSTICE PARTNERS LAW GROUP, a District
of Columbia Limited Partnership,
PERSIST COMMUNICATIONS, INC., a Florida
Corporation,
THE LAKE LAW FIRM, a New York Limited
Liability Company, and EDWARD LAKE,


Defendants

_____/

### PLAINTIFF'S RENEWED MOTION FOR PARTIAL REMAND AND FOR ATTORNEYS' FEES PURSUANT TO DEFENDANT, SYLVIA BENITO'S, "CORRECTED AMENDED NOTICE OF REMOVAL" [ECF #20]

Pursuant to the Court's December 22, 2025, Order Consolidating Cases in Case No. 25-cv-25578 [ECF # 17], this submission is being filed by Plaintiff in Case No. 25-cv-25578 but relates to the administratively closed proceedings of Case No. 25-cv-25583-BB. Plaintiff hereby files this Renewed Motion for Partial Remand and For Attorneys' Fees pursuant to Defendant Sylvia Benito's, December 17th, 2025, filing of her Corrected Amended Notice of Removal in Case No. 25-cv-25583-BB [ECF #20].

Therefore, pursuant to 28 U.S.C. §§ 1334(c)(1), 1334(c)(2), and 1452(b), Plaintiff moves for an Order remanding this action to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, as to all **non-debtor defendants**, and awarding Plaintiff attorneys' fees under 28 U.S.C. § 1447(c). As set forth below, removal was improper, subject-matter

jurisdiction is absent, mandatory abstention applies, permissive abstention and equitable remand overwhelmingly favor remand, and the timing and unilateral nature of the removal demonstrate a misuse of § 1452 to derail a state-court action structured for imminent trial.

## **INTRODUCTION**

Defendant Sylvia Benito removed this action to federal court invoking bankruptcy "related-to" jurisdiction under 28 U.S.C. § 1334(b) based **solely on the filing of an Involuntary Chapter 7 Petition** against Defendant The Lake Law Firm, LLC ("LLF")[1] in the United States Bankruptcy Court for the Eastern District of New York on **November 26, 2025**.

Every other defendant, **including the removing party Benito herself**, is a non-debtor. Benito's Notice of Removal improperly asserts that this entire state-court fraud action is removable in its entirety. After the filing of the involuntary petition forming the sole basis for removal, LLF itself subsequently commenced a separate Voluntary Chapter 11 case as a professional corporation in the Eastern District of New York. That voluntary filing does not expand federal jurisdiction over this action, does not retroactively validate an otherwise improper removal, and does not alter the fundamental jurisdictional defect that only **one of eight defendants** is a debtor while the claims against the remaining defendants proceed entirely under Florida law.

The claims in this action are **pure state-law fraud and fiduciary-duty claims**, asserted directly against Benito, Edward Lake, Lee Melchionni, Justice Partners Management, Justice Partners Law, and Group Persist Communications, Inc.. The allegations concern misrepresentations, diversion of investor funds, falsified records, and breaches of fiduciary duties

---

[1] Pursuant to Defendant Benito's Corrected Amended Notice of Removal she states that "there is no legal entity named Lake Law Firm LLC that is affiliated with Edward J. Lake or the Law Offices of Edward J. Lake, P.C. d/b/a The Lake Law Firm. For purposes of this filing the Plaintiff will reference the Defendant as The Lake Law Firm or LLF.

occurring years before either bankruptcy filing. A judgment against any non-debtor defendant would not alter LLF's rights, liabilities, property, or bankruptcy estate.

The state court, under Judge Lisa Walsh, has actively managed this complex case for many months and has set a three-week jury trial for January 2026, with discovery completed, dispositive motions filed, and pretrial deadlines underway. Removal occurred only after substantial proceedings and on the immediate heels of the involuntary Chapter 7 filing, and it was executed by a defendant who is **not the debtor** and who faces imminent trial exposure in state court. These parties have been litigating against each other in the Eleventh Judicial Circuit before Judge Walsh since 2022 following Plaintiff's initiation of Books and Records Action (*Allan Teh v. Justice Partners, LLC*; Case No: 2022-022470-CA-01). That related Books and Records Action went to trial where Judge Walsh entered a Final Judgment in favor of the Plaintiff, Allan Teh. The state court is intimately familiar with these parties, their history, the factual and procedural posture of the case, and is in the best position to resolve the improperly removed pending claims.

Under controlling Eleventh Circuit authority, particularly *Matter of Lemco Gypsum*, 910 F.2d 784 (11th Cir. 1990), *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995), and *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984), as adopted in this Circuit, shared facts or tangential connections to a bankruptcy proceeding do not create jurisdiction. The claims asserted here cannot "conceivably affect" LLF's bankruptcy estate within the meaning of § 1334(b). Because the claims as non-core, purely state-law, and ready for trial, mandatory abstention applies under § 1334(c)(2). Alternatively, permissive abstention under § 1334(c)(1) and equitable remand under § 1452(b) independently require remand. And because this removal lacked an objectively reasonable jurisdictional basis, Plaintiff seeks attorneys' fees under § 1447(c).

**BACKGROUND**

Plaintiff filed this action in 2024 in Miami-Dade Circuit Court. The operative First Amended Complaint asserts nine state-law causes of action including fraud, aiding and abetting, civil conspiracy, and breach of fiduciary duty against **eight defendants, seven of whom are non-debtors.**

The claims arise from a multi-entity scheme to divert investor funds, fabricate invoices, falsify portfolio valuations, and mislead investors. These claims concern conduct beginning in 2021 and extending long before LLF's involuntary petition. The state court has held multiple case management conferences, entered a scheduling order, supervised the completion of discovery, set a final pretrial conference for December 2025, and three week trial period beginning January 5th, 2025. Discovery is complete, expert deadlines have passed, and the case is on track for trial.

An involuntary Chapter 7 petition was filed **against LLF**, not Benito or any other defendant. LLF did **not** remove this case. After the filing of the involuntary petition forming the sole basis for removal, LLF itself subsequently commenced a separate Voluntary Chapter 11 case as a professional corporation in the Eastern District of New York. Benito, an individual, non-debtor defendant, removed the action under §1452. The Notice asserts only that the claims "relate to" LLF's bankruptcy because LLF issued invoices and received certain payments. This assertion is insufficient as a matter of law.

## ARGUMENT

### I. Removal Was Improper Because The Action Is Not "Related To" The LLF Bankruptcy And This Court Lacks Subject-Matter Jurisdiction

The removing defendant, Benito, asserts that this action "relates to" the involuntary bankruptcy proceeding involving only one defendant, The Law Offices of Edward J. Lake, P.C. ("LLF"), and therefore falls within this Court's jurisdiction under 28 U.S.C. §1334(b). That premise is incorrect. Under settled Eleventh Circuit law, a proceeding is "related to" a bankruptcy

4

case only if the outcome of the litigation could conceivably have an effect on the bankruptcy estate, meaning it must alter the debtor's rights, liabilities, options, or freedom of action in a manner that would impact estate administration. *Matter of Lemco Gypsum*, 910 F.2d 784, 788 (11th Cir. 1990) (*adopting Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984)). The standard, though broad, is not boundless: the presence of overlapping facts or some connection in narrative space is not sufficient. As the Supreme Court recognized in *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995), shared factual issues, common subject matter, or parallel litigation do not create bankruptcy jurisdiction.

Benito's Notice of Removal offers nothing more than this type of impermissible overlap. The claims in the operative complaint arise from a multi-party fraudulent scheme involving seven non-debtor defendants including Benito, Persist Communications, JP Management, JP Law Group, Edward Lake, and Lee Melchionni among them. The allegations describe misrepresentations, falsified invoices, diversion of investor funds, and breaches of fiduciary duties years before the LLF involuntary bankruptcy case existed. Nothing about Plaintiff's pursuit of damages against these individuals and entities will alter LLF's property, impose obligations on LLF, or interfere with estate administration. These claims can be resolved entirely without LLF's participation; indeed, as the factual record already developed in state court shows, the alleged misconduct of the non-debtors stands on its own.

Courts routinely reject jurisdiction in materially similar circumstances. *Pacor* itself held that a third-party action against a non-debtor "would have no effect on the bankruptcy estate," even if the debtor was implicated factually. 743 F.2d at 995. The Southern District of Florida similarly held in *Pinkozie v. Rick's Cabaret Int'l, Inc.*, 841 F. Supp. 2d 1342, 1347 (S.D. Fla. 2012), that no "related-to" jurisdiction exists where the debtor's involvement is secondary or tangential, even where the debtor may appear in background allegations.

Those principles apply squarely here. LLF's bankruptcy does not convert this eight-party state-law fraud action into a matter requiring federal oversight. Plaintiff seeks money damages, not turnover of specific estate property. Plaintiff asserts direct claims for personal harm, not derivative claims asserting rights of LLF or its stakeholders. No judgment in this case will determine what property belongs to LLF, resolve estate administration issues, or change LLF's legal posture in bankruptcy. Any hypothetical indemnity or contribution claims between non-debtors and LLF, which Benito does not even identify, are too attenuated and speculative to create "related-to" jurisdiction.

Benito's initiation of the involuntary bankruptcy proceeding against The Law Offices of Edward J. Lake, P.C. was not undertaken for any legitimate reorganization or liquidation purpose, but rather as a tactical device to halt imminent state-court adjudication and to benefit from the automatic stay. Federal courts have repeatedly condemned this precise maneuver. In *Singer Furniture Acquisition Corp. v. SSMC, Inc. N.V.*, the Middle District of Florida affirmed dismissal of a bankruptcy case filed on the eve of trial where the record showed the petition was part of an **abusive scheme** designed to frustrate and delay ongoing litigation, holding that such conduct constitutes bad faith and an abuse of the bankruptcy system. 254 B.R. 46, 52–53 (M.D. Fla. 2000). There, as here, the bankruptcy filing followed failed efforts to derail the underlying litigation and was timed specifically to invoke the automatic stay as a litigation shield rather than to address any legitimate insolvency concern.

The parallels are unmistakable. Benito pursued the involuntary petition only after this case had been pending for more than a year, after discovery had closed, after dispositive motions were filed, and only once a **firm January 2026 jury trial date** was set by Judge Walsh. Just as in *Singer Furniture*, the timing itself evidences an intent to misuse the Bankruptcy Code to obstruct

6

adjudication on the merits. The bankruptcy filing was thus not a good-faith invocation of federal insolvency protections but a calculated attempt to weaponize the automatic stay to delay trial and is **"nothing short of abuse"** of the judicial process. See *id.* at 52 (bankruptcy filings motivated by an intent to delay or frustrate state-court litigation constitute bad faith and warrant judicial condemnation). This Court should view the involuntary petition and the ensuing removal in that same light.

Accordingly, this Court lacks subject-matter jurisdiction under §1334(b). The proper forum remains the state court that has actively supervised this litigation for more than a year, managed complex discovery, ruled on dispositive motions, and set the case for trial in January 2026.

## II.     Mandatory Abstention is Required Under 28 U.S.C. § 1334(c)(2)

Even if the Court were to conclude that "related-to" jurisdiction exists, which it does not, this case must still be remanded under the mandatory abstention doctrine. Congress has directed that federal courts **shall abstain** from hearing a proceeding if the following conditions are met: 1) a timely motion is filed; 2) the lawsuit is based entirely on state-law claims; 3) federal jurisdiction rests solely on § 1334(b); 4) the proceeding is non-core; the action was commenced in state court; and 6) the matter can be timely adjudicated in the state forum. *In re United Container LLC*, 284 B.R. 162, 171 (Bankr. S.D. Fla. 2002). Every statutory requirement is satisfied here.

First, this motion is unquestionably timely. Plaintiff filed it promptly after removal, and no federal proceedings have occurred that would complicate or delay abstention. Second, the claims in the operative complaint arise exclusively under Florida law. Plaintiff alleges fraud, aiding and abetting fraud, civil conspiracy, and breaches of fiduciary duty which are traditional state-law causes of action that do not depend on Title 11 rights or remedies. No federal claims or bankruptcy-

specific causes of action appear in the complaint, and the parties' rights can be fully adjudicated without interpreting or applying bankruptcy law.

Third, the removing defendant relies solely on § 1334(b) as the basis for federal jurisdiction. Benito is a non-debtor, and she identifies no independent basis for federal jurisdiction such as diversity or a federal question. The only asserted hook is LLF's involuntary bankruptcy, which is insufficient to confer jurisdiction for the reasons already addressed.

Fourth, this proceeding is unquestionably non-core. A core proceeding is one that arises under Title 11 or arises in a bankruptcy case—such as claim allowance, turnover of estate property, or avoidance actions. The claims here do not arise under Title 11, nor could they exist only in the context of a bankruptcy proceeding. They involve prepetition conduct among private parties and seek damages for fraud and fiduciary misconduct. Courts consistently treat such claims as non-core because they could proceed in another court even if no bankruptcy existed. *See, e.g., Matter of Lemco Gypsum*, 910 F.2d at 788; *Pacor*, 743 F.2d at 994–95.

Fifth, the action was not only commenced in state court but was actively litigated there for well over a year. The state court entered a complex business case-management order, held multiple case-management conferences, handled extensive discovery disputes, and oversaw dispositive motion practice. Most importantly, the state court set this case for a **three-week jury trial beginning January 5, 2026**. Few cases present a stronger showing that the state forum is already deeply engaged.

Finally, and critically, the state court can timely adjudicate this action. Timeliness is not a theoretical inquiry here; the state court has already committed trial time and resources to concluding this dispute. Discovery is complete, expert deadlines have passed, and pretrial procedures are underway. Federal courts routinely hold that where a state court has set trial and

the case is nearing completion, the "timely adjudication" prong is satisfied. The facts here meet that standard with ease. Therefore, mandatory abstention is not discretionary. Section 1334(c)(2) uses the word "shall," and where all statutory elements are present, the federal court must abstain and remand the action. Because each requirement is plainly met, this Court is compelled to abstain from hearing the claims and return this matter—at least as to the non-debtor defendants—to the Miami-Dade Circuit Court for resolution.

Additionally, Federal courts have recognized that bankruptcy jurisdiction should not be used to federalize complex, multi-party state-law disputes where **non-debtors predominate**, even if a debtor is tangentially involved. In *Matter of Mandalay Shores Co-Op Housing Ass'n*, the bankruptcy court confronted a removed state-court action involving numerous non-debtor defendants and exclusively state-law claims, with only one party subject to bankruptcy protection. *Matter of Mandalay Shores Co-Op Hous. Ass'n*, 21 B.R. 379, 386–87 (Bankr. M.D. Fla. 1982). The court expressly stated that it was "not convinced that it should entertain a controversy between non-debtor plaintiffs and non-debtor defendants, even though the debtor is involved and may be an indispensable party to some counts of the Complaint." *Id.* at 387. The court therefore concluded that the "most just and acceptable resolution" was to remand the proceeding to state court for trial, emphasizing that bankruptcy jurisdiction is not designed to absorb litigation that is, at its core, a non-debtor, state-law dispute. *Id.* at 387–88. That reasoning applies squarely here, where seven of eight defendants are non-debtors and every substantive claim arises solely under Florida law.

Equally significant, *Mandalay Shores* confirms that remand of a multi-party action is fully compatible with continuation of the automatic stay as to the debtor. The court made clear that "remand of the case is not to be equated with modification of the stay," and that the debtor remained fully protected by 11 U.S.C. § 362, requiring any party seeking to proceed against the

9

debtor in state court to first obtain stay relief. *Id.* at 388. In other words, the court endorsed the precise procedural framework sought here: allow the state court to proceed with adjudication of claims involving non-debtor defendants, while preserving the bankruptcy court's exclusive jurisdiction over the debtor through the automatic stay. As in *Mandalay Shores*, Plaintiff does not seek to proceed against LLF absent appropriate stay relief. Rather, Plaintiff seeks remand only of the claims against the non-debtor defendants, so that the state court may adjudicate the core fraud and fiduciary-duty dispute it has already managed for more than a year, while LLF remains fully protected within the bankruptcy forum.

### III.    Permissive Abstention and Equitable Remand Provide Independent and Compelling Grounds For Remand.

Even if the Court were to conclude that it possesses "related-to" jurisdiction and that mandatory abstention does not apply, the case should still be remanded under the doctrines of permissive abstention and equitable remand. Congress has vested federal courts with broad discretion to decline jurisdiction over state-law disputes that only tangentially intersect with a bankruptcy proceeding. See 28 U.S.C. §§ 1334(c)(1), 1452(b). Courts applying these provisions evaluate a constellation of considerations, including the predominance of state-law issues, the degree to which the proceeding is connected to the bankruptcy case, the presence of non-debtor parties, comity, prejudice to the litigants, judicial economy, the feasibility of severing bankruptcy-related claims, and the risk of forum shopping. When these factors are weighed in totality, they overwhelmingly favor remand. *In re United Container LLC*, 284 B.R. 162, 177 (Bankr. S.D. Fla. 2002).

This action is a pure state-law controversy. The operative complaint alleges fraud, aiding and abetting, breach of fiduciary duty, and civil conspiracy among Florida-based entities and individuals. These claims arise from prepetition conduct and invoke no federal rights or

10

bankruptcy-based causes of action. State courts have a superior interest and competency in adjudicating such issues, and Florida law supplies all relevant rules of decision. The fact that one defendant subsequently became the subject of an involuntary bankruptcy petition does not transform the litigation into a matter requiring federal adjudication.

The connection between this litigation and LLF's bankruptcy is minimal. The claims against LLF are automatically stayed and can remain stayed in state court without affecting the litigation against the seven non-debtor defendants. Courts routinely hold that where a matter can proceed against non-debtors without impairing the administration of the bankruptcy estate, permissive abstention and equitable remand are appropriate. The Eleventh Circuit's framework in *Matter of Lemco Gypsum*, 910 F.2d 784, 788 (11th Cir. 1990), makes clear that factual overlap or some ancillary relationship to a bankruptcy case does not confer jurisdiction, and the same attenuated relationship weighs strongly in favor of declining jurisdiction under §§ 1334(c)(1) and 1452(b).

Judicial economy also favors remand. The state court has supervised this case from its inception, including managing extensive discovery, resolving motions, conducting case-management hearings, and setting the matter for a three-week jury trial in January 2026. For this Court to assume jurisdiction now would disrupt that schedule, duplicate prior judicial efforts, and delay adjudication.

The feasibility of severance further supports remand. The claims against LLF are stayed by operation of 11 U.S.C. §362, and the state court is fully capable of maintaining that stay while allowing the action to proceed against the non-debtors. This preserves bankruptcy protections while avoiding unnecessary federal intervention.

Finally, the circumstances surrounding removal warrant equitable remand. Benito, a non-debtor defendant, removed the action after more than a year of active state-court litigation and only once the state court imposed a firm trial date. Courts evaluating equitable-remand motions frequently consider whether a party is attempting to use §1452 as a tactical device to escape an advancing state-court schedule. Removal under these circumstances particularly by a non-debtor who invokes another party's bankruptcy as a reason to abandon a nearly completed state-court proceeding supports remand based on fairness and comity.

Taken together, the predominance of state-law issues, the minimal connection to the LLF bankruptcy, the advanced posture of the state litigation, the involvement of numerous non-debtor defendants, the ease with which LLF's claims can remain stayed in state court, and the indicia of tactical removal all point in the same direction. Even if jurisdiction existed, this Court should abstain and remand the case pursuant to §§ 1334(c)(1) and 1452(b).

January 9th, 2026,

<div style="margin-left:50%">

Respectfully submitted,

**JONES & ADAMS, P.A.**
*Attorney for Plaintiff*
999 Ponce de Leon Blvd., Suite 925
Coral Gables, FL 33134
Tel: (305) 270-8858
Fax: (305) 270-6778
e.rojodotel@jones-adams.com

By:    */s/ Eric S. Rojo Dotel, Esq.*
Eric S. Rojo Dotel, Esq.
Florida Bar No.: 1031871

</div>

12

**MEET AND CONFER CERTIFICATE**

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that on January 6th, 2026, Plaintiff's Counsel met and conferred with Defendants' Counsel. As the substance of Defendant, Syliva Benito's, Amended Notice of Removal and previously filed Notice of Removal remained identical the parties reassert their positions expressed during the December 4th, 2025, meet and confer held via zoom. The parties are unable resolve the issues set forth in this Motion. Defendants' Counsel opposes the relief sought.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 9th, 2026, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Eric S. Rojo Dotel, Esq.*