UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALLAN TEH,

    Plaintiff,

      v.

LEE MELCHIONNI, individually,
SYLVIA BENITO, individually, PERSIST
COMMUNICATIONS, INC., a Florida Corporation,
and THE LAKE LAW FIRM, a New York Limited
Liability Company,

    Defendants.

Case No. 1:25-cv-25578-BLOOM

Consolidated with:
Case No. 25-cv-25581-BLOOM
Case No. 25-cv-25583-BLOOM
Case No. 25-cv-25584-BLOOM

## DEFENDANT SYLVIA BENITO'S OMNIBUS OPPOSITION TO PLAINTIFF'S RENEWED MOTIONS FOR PARTIAL REMAND AND FOR ATTORNEYS' FEES

Defendant Sylvia Benito opposes all four of Teh's Renewed Motions for Partial Remand and for Attorneys' Fees (ECF Nos. 22-25) ("Motions"), and states as follows:[1]

### I.    INTRODUCTION

Teh's Motions should be denied. Instead, the Court should transfer the four consolidated cases to the United States District Court for the Eastern District of New York, where they will be automatically referred to the bankruptcy court (the "Bankruptcy Court") presiding over a pending chapter 7 bankruptcy case styled: *In re Law Offices of Edward J. Lake, P.C. d/b/a The Lake Law Firm*, No. 8-25-74584 (LAS) (Bankr. E.D.N.Y.) (the "Bankruptcy Case"). These actions implicate a core determination concerning whether and to what extent Teh's money, which he alleges was transferred to and is currently in the possession of Defendant-Debtor The Lake Law Firm,

---

[1] On December 22, 2025, the Court consolidated the above-captioned cases and ordered that all filings be made in Case No. 25-cv-25578-BLOOM. (ECF No. 17.)

constitutes property of the bankruptcy estate in the Bankruptcy Case. *See* 28 U.S.C. § 157(b)(2); *In re Salander-O'Reilley Galleries, LLC*, 475 B.R. 9, 29 (S.D.N.Y. 2012) (determining what constitutes estate property is a core proceeding); *In re Bank United Fin. Corp.,* 462 B.R. 885, 893-94 (Bankr. S.D. Fla. 2011) (same). Teh's remand request does not justify bypassing transfer. Courts routinely address transfer to the home bankruptcy court in removed actions, which implicate estate-property determinations and creditor-liability issues, leaving remand and abstention arguments for resolution in that forum.

Importantly, no fewer than seven actions, including the four here, are "related to" the Bankruptcy Case.[2] Three of those "related to" cases were removed and referred to the Bankruptcy Court, and Teh's four actions pending before this Court should be transferred. As the "home" court where the Bankruptcy Case is pending, the Bankruptcy Court is in the best position to decide in the first instance whether and to what extent Teh's claims affect the administration of the Bankruptcy Case, and whether remand, abstention, or severance are appropriate here. *See In re Pan Am Corp.*, 16 F.3d 513, 516-17 (2d Cir. 1994) ("If the transfer motion is met with a cross-motion to abstain, the presumption is that '[t]ransfer should be the rule, abstention the exception.'").

Moreover, the Court has jurisdiction over these actions because Teh's claims against Benito are inextricably "related to" the Bankruptcy Case. *See* 28 U.S.C. §§ 1452(a) and 1334(b). (*See generally* Operative Complaints; *see also* 25-CV-25584-BLOOM, Second Amended Derivative

---

[2]     In addition to the four above-captioned actions in this Court, three other New York cases "related to" the Bankruptcy Case are pending in the Bankruptcy Court, and they are styled: (1) *Benito v. Lake, et al.*, No. 8-25-08123 (Bankr. E.D.N.Y.); (2) *Solit, et al. v. Lake, et al.*, No. 8-25-08122 (Bankr. E.D.N.Y.); (3) *Law Office of Edward J. Lake d/b/a The Lake Law Firm, et al. v. Melchionni, et al.*, No. 25-cv-06213 (Bankr. E.D.N.Y.) (*see* ECF No. 10 (referring case to Bankruptcy Court)). (*See* ECF No. 21 (Benito's Motion to Transfer).)

Complaint at ¶¶ 99, 144-50, 172-81, 191-203 (alleging all Defendants "acted in concert" to deprive Teh of his money, and that Teh's money is currently in the debtor's possession).)

In fact, Teh's own allegations place his investment funds in the debtor's control, such that adjudication of his claims necessarily implicates the scope of the bankruptcy estate, and the outcome of these actions could alter the debtor's liabilities and the administration of the estate, satisfying "related to" jurisdiction under binding Eleventh Circuit precedent.

In sum, Benito asks the Court to transfer this case to the United States District Court for the Eastern District of New York, where it will be referred to the Bankruptcy Court presiding over the Bankruptcy Case, which is uniquely positioned to assess Teh's Motions in light of the estate-wide implications of his claims. Alternatively, the Court should deny the Motions. *See* Admin. Order No. 264 (E.D.N.Y. Aug. 28, 1986) (Under "28 U.S.C. § 157(a) . . . all proceedings arising under title 11, or arising in or related to a case under title 11 . . . are referred to the Bankruptcy Judges").

## II.     BACKGROUND

Between March 15, 2023, and October 25, 2024, Teh commenced four lawsuits in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. In these actions, Teh alleges, among other things, that Defendants committed or aided and abetted fraud and breached fiduciary duties in connection with his investment in mass torts cases through Defendant "The Lake Law Firm, a New York Limited Liability Company." (*See generally* Operative Complaints.) Two of the four cases were referred to arbitration. In one of them, the parties are engaged in motion practice in this Court to confirm, vacate, or modify an arbitration award. (*See* Case No. 25-cv-25581-BLOOM.) In the other, Benito asked the arbitrator to stay the arbitration because the claims implicate issues central to the pending Bankruptcy Case, including

3

the status of estate property, pending a decision by the Bankruptcy Court on how to proceed. (*See* Case No. 1:25-cv-25578-BLOOM (related American Arbitration Association Case No. 1-25-0003-6283)).

As discussed below, since removing these actions to this Court, Benito discovered that the alleged entity Teh named, "The Lake Law Firm, a New York Limited Liability Company," is not the correct party. Rather, the correct party is "Law Offices of Edward J. Lake, P.C. d/b/a The Lake Law Firm" ("The Lake Law Firm"). Teh alleged The Lake Law Firm was unjustly enriched by the transfer of his funds to the debtor Lake Law Firm and erroneously states that it "to this day, h[as] continued to retain those funds." (*See* Case No. 1:25-cv-25578-BLOOM, Compl. ¶¶ 126-137.) In fact, the cash was transformed into cases and other non-cash assets, which are now being administered in the bankruptcy estate. Teh also seeks an equitable accounting of the debtor The Lake Law Firm. (*See id.* ¶¶ 138-151.) Those allegations place the disputed funds squarely within the scope of the Bankruptcy Court's authority to determine what constitutes property of the estate. More specifically, these actions involve discrete disputes that arose within a larger investment structure, and that structure includes numerous other stakeholders and parties in interest whose rights may be affected by any determination regarding estate property, to the litigation funding venture the parties undertook. (*See generally* Operative Complaints.)

On November 26, 2025, four creditors, including Benito, filed two involuntary petitions under chapter 7 of title 11 of the United States Code ("Bankruptcy Code") styled: (1) *In re Law Offices of Edward J. Lake, P.C. d/b/a The Lake Law Firm*, No. 8-25-74584 (LAS) (Bankr. E.D.N.Y.) and (2) *In re Lake Law Firm LLC*, No. 8-25-74585 (LAS) (Bankr. E.D.N.Y.). Those filings triggered the Bankruptcy Court's exclusive jurisdiction to determine what constitutes property of the estate and how competing claims to estate assets must be resolved.

4

On the same day, Benito removed these actions to this Court under 28 U.S.C. §§ 1452 and 1334(b), based on the case styled: *In re Lake Law Firm LLC*, No. 8-25-74585 (LAS) (Bankr. E.D.N.Y.) on the ground that Teh's claims are at least "related to" that bankruptcy case. (ECF No. 1.) Removal was proper because Teh alleges that his investment funds were transferred to, and remain in the possession of, the debtor. In fact, his investment funds were transformed into non-cash assets, all of which are in the possession of the debtor. As such, it is clear that adjudication of Teh's claims could affect the administration of the bankruptcy estate.

On December 4, 2025, the Court entered an order directing the parties to show cause in Case No. 1:25-cv-25578-BLOOM "(1) whether the Court has jurisdiction over the instant action and (2) if the Court does have jurisdiction, why the case should not be transferred to the United States Bankruptcy Court for the Eastern District of New York or stayed pending the disposition of the Bankruptcy Case." (ECF No. 4.) That order expressly recognizes that transfer to the home bankruptcy court is a threshold issue tied to the Court's jurisdictional analysis.

The same day, Benito moved to transfer these four actions to the United States Bankruptcy Court for the Eastern District of New York—the "home" court for the bankruptcy cases—under 28 U.S.C. §§ 1404(a) and 1412 and Federal Rule of Bankruptcy Procedure 7087 on the grounds that transfer is in the interests of justice and convenience of the parties. (ECF No. 5.) That motion seeks to ensure that all disputes affecting estate property and creditor claims are resolved in a single forum with oversight of the Bankruptcy Case.

On December 5, 2025, Teh filed a motion for partial remand and attorneys' fees. (ECF No. 6.) Teh requested remand of all claims except the claims against the Defendant he identified as "The Lake Law Firm, a New York Limited Liability Company." He acknowledged that his claims against that alleged entity would "remain[ ] subject to the automatic stay." (ECF No. 6 at

5

1.)

On December 16, 2025, Benito filed an Amended Notice of Removal. (ECF No. 8.) Instead of basing removal on the case styled: *In re Lake Law Firm LLC*, No. 8-25-74585 (LAS) (Bankr. E.D.N.Y.), as the initial Notice of Removal did (ECF No. 1), the Amended Notice of Removal bases removal to this Court on the case styled: *In re Law Offices of Edward J. Lake, P.C. d/b/a The Lake Law Firm*, No. 8-25-74584 (LAS) (Bankr. E.D.N.Y.).[3] (ECF No. 8.) This is because after filing the initial Notice of Removal, Benito discovered that the proper name of the entity Teh intended to sue was not "The Lake Law Firm, a New York Limited Liability Company," as alleged in his Complaints, but rather "Law Offices of Edward J. Lake, P.C. d/b/a The Lake Law Firm." The amendment clarified, rather than expanded, the jurisdictional basis for removal by correctly identifying the debtor whose estate is implicated by Teh's allegations.

On December 17, 2025, the Court denied as moot the pending motions for transfer, remand, and extension of time to oppose remand because of Benito's Amended Notices of Removal. (ECF Nos. 10–12.) On December 18, 2025, Teh and Benito responded to the Court's order to show cause. (ECF Nos. 13–14.) On December 22, 2025, the Court consolidated all four of Teh's cases. (ECF Nos 16–17.)

On January 9, 2026, Benito renewed her motion to transfer all four actions to the Bankruptcy Court. (ECF No. 21.) The same day, Teh filed the Motions. (ECF Nos. 22-25.) As before, Teh seeks remand of all claims apart from those against "the Lake Law debtor entities,"

---

[3]     Benito filed an Amended Notice of Removal in all four cases, and she thereafter filed a Corrected Amended Notice of Removal in three of the four actions to correct a typographical error in the referenced underlying state court case numbers. *See Teh v. Melchionni, et al.*, No. 1:25-cv-25581-BLOOM (S.D. Fla. 2025) (ECF Nos. 13, 17); *Teh v. Melchionni, et al.*, No. 1:25-cv-25583-BLOOM (S.D. Fla. 2025) (ECF Nos. 11, 16); *Teh v. Melchionni, et al.*, No. 1:25-cv-25584-BLOOM (S.D. Fla. 2025) (ECF Nos. 14, 20).

and he acknowledges that his claims against The Lake Law Firm "remain[] subject to the automatic stay." (*Id.*) As to his claims against non-debtor Defendants, Teh argues that this Court lacks "related to" jurisdiction because he seeks relief against them "based on their own alleged wrongdoing." (ECF No. 22 at 4; *see also* ECF Nos. 23-25.)  Teh further contends that the prerequisite factors for mandatory abstention as well as equitable remand are satisfied because, among other things, these cases are "governed entirely by Florida law" and the state court or arbitrator is "capable of timely adjudication." (ECF No. 22 at 4-5; *see also* ECF Nos. 23-25.)  He also seeks attorneys' fees under 28 U.S.C. § 1447(c). (*See* ECF Nos. 22-25.)

### III.  LEGAL STANDARDS

#### A. Jurisdiction and Venue

The Bankruptcy Court has exclusive jurisdiction over core bankruptcy proceedings to determine what constitutes property of the bankruptcy estate. *See* 28 U.S.C. § 157(b); *In re Salander-O'Reilley Galleries, LLC*, 475 B.R. at 29 (determining what constitutes property of the bankruptcy estate is a core proceeding in the exclusive jurisdiction of the bankruptcy court under § 157(b)(2)); *In re Bank United Fin. Corp.,* 462 B.R. 885, 893-94 (Bankr. S.D. Fla. 2011) (same).

Further, in circumstances, as here, where a civil action related to a bankruptcy case originates in state court, "[a] party *may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending*, if such district court has jurisdiction of such claim or cause of action under section 1334." 28 U.S.C. § 1452(a) (emphasis added). In turn, district courts "shall have original but not exclusive jurisdiction of all civil proceedings . . . related to cases under title 11," (*i.e.*, the Bankruptcy Code). 28 U.S.C. § 1334(b). In the Eleventh Circuit, a civil proceeding is "related to" a bankruptcy case when "the potential outcome of the dispute . . . would 'conceivably have an effect on' the bankruptcy estate," and that

"includes any action 'which in any way impacts upon the handling and administration of the bankrupt estate." *In re Kachkar*, 769 F. App'x 673, 679 (11th Cir. 2019). "The ['related to'] proceeding need not necessarily be against the debtor or against the debtor's property." *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990).

Even if they have jurisdiction over a "related to" action, district courts generally adhere to the "presumption in favor of the 'home court,'" and transfer cases to the bankruptcy court where the bankruptcy case is pending. *See UMB Bank, N.A. v. Sum Cap. Partners V, LP*, No. 19-CV-80074 (Rosenberg/Reinart), 2019 WL 9049056, at *1 (S.D. Fla. June 12, 2019) (transferring "related to" action to the "home Bankruptcy Court" pursuant to § 1412 because "the economics of estate administration and the presumption in favor of the home court weigh strongly in favor of transfer"). Moreover, district courts typically transfer cases to the "home" bankruptcy court prior to determining issues like remand and abstention, leaving it up the "home" bankruptcy court to decide those types of issues. *See Brown v. General Nutrition Co., Inc.*, No. 06-80391-CIV (Ryskamp/Vitunac), 2006 WL 8433366, at *2-4 (S.D. Fla. Oct. 24, 2006) (granting § 1412 motion to transfer "related to" action to home bankruptcy court and denying motion to remand and abstain); *Commonwealth Assisted Living, LLC, Series E v. Vestavia Hills, Ltd.*, 616 B.R. 159, 172-73 (Bankr. N.D. Ala. 2020) (granting § 1412 motion to transfer "related to" action to home bankruptcy court before deciding remand or abstention motions).

## B. Mandatory Abstention

"Core matters are not subject to mandatory abstention under Section 1334(c)(2)[.]" *In re British American Ins. Co. Ltd.*, 488 B.R. 205, 234 n.28 (Bankr. S.D. Fla. 2013). Mandatory abstention under 28 U.S.C. § 1334(c)(2) requires a federal court to abstain from exercising "related to" jurisdiction over a "State law claim or State law cause of action related to a case under title 11"

8

if "(1) it is a non-core proceeding based on a state-law claim or cause of action; (2) the claim or cause of action has no independent basis for federal jurisdiction other than § 1334; and (3) an action has been commenced and can be timely adjudicated in state court." *In re Ellingsworth Residential Cmty. Assoc., Inc.*, 125 F.4th 1365, 1383 (11th Cir. 2025) (citing 28 U.S.C. § 1334(c)(2)). The movant bears the burden to show mandatory abstention applies, and "courts interpreting the phrase 'timely adjudication' have 'not focused primarily on when the case would be tried but rather on whether allowing an action to proceed in state court will have any unfavorable effect on the administration of a bankruptcy case.'" *In re Antol Restoration, Inc.*, 444 B.R. 481, 486-87 (Bankr. S.D. Fla. 2011).

## C. Discretionary Abstention & Equitable Remand

The discretionary abstention doctrine allows "a district court in the interest of justice, or in the interest of comity with State courts or respect for State law," to abstain "from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1); *In re British American Ins. Co. Ltd.*, 488 B.R. at 234 n.28 ("Core matters . . . are rarely subject to permissive abstention under Section 1334(c)(1) or equitable remand because of their central role in a bankruptcy case."). Under the equitable remand doctrine, courts may remand a "claim or cause of action" "related to" a bankruptcy case "on any equitable ground." 28 U.S.C. § 1452(b). The two doctrines are similar, and courts determining whether such relief is appropriate consider several factors:

> (1) the effect, or lack of effect, on the efficient administration of the bankruptcy estate if discretionary abstention is exercised, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of related proceedings commenced in state court or other non-bankruptcy courts, (5) the jurisdictional basis, if any, other than § 1334, (6) the degree of relatedness or remoteness of the proceedings to the main bankruptcy case, (7) the substance rather than the form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from

9

core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on the bankruptcy court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to jury trial, (12) the presence in the proceeding of non-debtor parties, (13) comity, and (14) the possibility of prejudice to other parties in the action.

*In re United Container LLC*, 284 B.R. 162, 176 (Bankr. S.D. Fla. 2002).

### D. Attorneys' Fees

Although § 1447(c) permits an award of attorney fees "incurred as a result of the removal," 28 U.S.C. § 1447(c), such awards are only permissible "where the removing party lacked an objectively reasonable basis for seeking removal," *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). "[W]hen an objectively reasonable basis exists, fees should be denied." *Id.*

## IV. <u>ARGUMENT</u>

### A. Transfer to the "Home" Bankruptcy Court Should Precede A Decision on Teh's Motions

The's contention that this Court should decide remand or abstention first undermines the purpose of transfer under 28 U.S.C. §§ 1412 and 1452, which is the centralized administration of bankruptcy-related disputes in the court best positioned to assess core estate-property determinations and their effect on the administration of the bankruptcy estate. Transfer first promotes uniformity and efficiency and does not prejudice Teh, because those arguments remain available for determination by the transferee bankruptcy court in the first instance.

The "home" Bankruptcy Court is in the best position to assess whether severance, abstention, or remand is appropriate. All four actions implicate a core bankruptcy determination concerning whether the funds Teh seeks to recover constitute property of The Lake Law Firm's bankruptcy estate. While Teh's direct claims against non-debtor Defendants are non-core, they are inextricably intertwined with the derivative (core) claims because Teh alleges the funds at issue

are currently in the debtor's possession.  *See* 28 U.S.C. § 157(b)(2); *In re Salander-O'Reilley Galleries, LLC*, 475 B.R. at 29 ("[T]he determination of what property constitutes the bankruptcy estate is a core proceeding").

Determining what constitutes property of the estate falls within the district court's exclusive in rem jurisdiction and is addressed in the bankruptcy court pursuant to referral. *See* 28 U.S.C. § 157(b)(2). Teh's own allegations underscore this intertwining. He alleges that all Defendants, including the debtor, The Lake Law Firm, "acted in concert" to deprive him of his investment funds, which he contends are now held by the debtor. (*See generally* Operative Complaints; *see also* 25-CV-25584-BLOOM, Second Amended Derivative Complaint at ¶¶ 99, 144-50, 172-81, 191-203.) Resolution of those allegations requires the Bankruptcy Court's authority to determine whether the funds at issue are estate property under 11 U.S.C. § 541(a). *See* 28 U.S.C. § 157(b)(2); 11 U.S.C. § 541(a) (property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case"); *In re Salander-O'Reilley Galleries, LLC*, 475 B.R. at 29 ("the determination of what property constitutes the bankruptcy estate is a core proceeding" in the exclusive jurisdiction of the Bankruptcy Court); *In re Bank United Fin. Corp.,* 462 B.R. at 893-94 (same).

Moreover, Teh's claims against Benito and Melchionni are inextricably intertwined with his claims against The Lake Law Firm, such that transfer of all four actions to the Bankruptcy Court advances the Bankruptcy Code's objectives of centralized claim resolution, avoidance of piecemeal litigation, and equitable treatment of creditors. *See In re Universal Towers Constr., Inc.*, 641 B.R. 691, 704 (M.D. Fla. 2022) (recognizing that the purpose of the Bankruptcy Code is to centralize resolution of claims, avoid piecemeal litigation, maximize recovery for creditors, and achieve fundamental fairness and justice).

Second, three pending New York actions involving substantially the same parties, excluding Teh, have already been referred to the Bankruptcy Court. (*See* n.1, *supra*). Keeping Teh's actions in this Court while related disputes proceed in the Bankruptcy Court would frustrate the Bankruptcy Code's goals of "protect[ing] creditors from piecemeal litigation"; "achieving fundamental fairness and justice" by preventing a "race to the courthouse"; and "the equitable distribution of the debtor's assets amongst his creditors." *In re Universal Towers Constr., Inc.*, 641 B.R. at 704 (quoting authorities); *In re Knepp*, 229 B.R. 821, 844-45 (Bankr. N.D. Ala. 1999) ("The Bankruptcy Code affords one forum for resolution of all disputes affecting the administration of the estate. The policy is to centralize all disputes for the benefit of all parties."). Those objectives, together with "the presumption in favor of the home court" favor transfer of these actions to the "home" Bankruptcy Court. *See In re Pan Am Corp.*, 16 F.3d at 516-17 ("If the transfer motion is met with a cross-motion to abstain, the presumption is that '[t]ransfer should be the rule, abstention the exception.'"); *UMB Bank*, 2019 WL 9049056, at *2-3 (transferring "related to" action to the "home Bankruptcy Court" pursuant to § 1412 because "the economics of estate administration and the presumption in favor of the home court weigh strongly in favor of transfer"); *Brown*, 2006 WL 8433366, at *2-4 (granting § 1412 motion to transfer "related to" action to home bankruptcy court and denying motion to remand and abstain); *Commonwealth Assisted Living*, 616 B.R. at 172-73 (granting Section 1412 motion to transfer "related to" action to home bankruptcy court before deciding remand or abstention motions because the "avoidance of piecemeal litigation and minimizing the risk of conflicting judgments are of paramount concern . . . [and] transfer safeguards against the undesirable consequences of having too many courts in the kitchen").

Therefore, the Court should grant Benito's motion to transfer all four consolidated actions

to the Bankruptcy Court under 28 U.S.C. §§ 1404(a) and 1412 so the Bankruptcy Court may consider Teh's Motions in the full context of all the facts and circumstances involving the Bankruptcy Case. *See In re Pan Am Corp.*, 16 F.3d at 516-17; *UMB Bank*, 2019 WL 9049056, at *2-3; *Brown*, 2006 WL 8433366, at *2-4; *Commonwealth Assisted Living*, 616 B.R. at 172-73.

### B. The Court Has Jurisdiction Over These Actions

This Court has subject matter jurisdiction because these actions are at least "related to" the Bankruptcy Case. *See* 28 U.S.C. §§ 1452, 1334(b). Specifically, the Court has "related to" jurisdiction over Teh's claims against Benito because he alleges all Defendants engaged in a common venture, and that Benito and Melchionni (who are creditors of The Lake Law Firm) transferred some or all of his investment money to The Lake Law Firm. (*See generally* Operative Complaints.) Teh's investment money is allegedly property that may constitute The Lake Law Firm's bankruptcy estate. (*See* Case No. 1:25-cv-25578-BLOOM, Compl. ¶¶ 126-137.) The Bankruptcy Court has exclusive jurisdiction over core proceedings determining what property constitutes The Lake Law Firm's bankruptcy estate. *See In re Salander-O'Reilley Galleries, LLC*, 475 B.R. at 29.

Accordingly, Teh's claims against Benito "could conceivably have an effect on" the Bankruptcy Case because they implicate The Lake Law Firm's liabilities. *See In re Kachkar*, 769 F. App'x at 679; *Wortley v. Bakst*, 844 F.3d 1313, 1318-19 (11th Cir. 2017) ("An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."). *Matter of Lemco Gypsum*, 910 F.2d at 788 ("The ['related to'] proceeding need not necessarily be against the debtor or against the debtor's property.").

13

**C. Mandatory Abstention Does Not Apply to Core Proceedings And It Also Fails Because Teh Has Not Shown the State Court Can Timely Adjudicate These Actions Without an Unfavorable Effect on the Administration of the Bankruptcy Case**

Because "core matters are not subject to mandatory abstention under Section 1334(c)(2)" and, as explained above, these actions involve core proceedings to determine whether and to what extent Teh's money is property of The Lake Law Firm's bankruptcy estate, mandatory abstention does not apply. *In re British American Ins. Co. Ltd.*, 488 B.R. at 234 n.28. *See also* 28 U.S.C. § 1334(c)(2).

Even if these cases did not involve core proceedings, Teh has failed to carry his burden to show that mandatory abstention applies here. Under § 1334(c)(2), Teh has the burden to show, among other things, that the state court can timely adjudicate this action without "an unfavorable effect on the administration of" the Bankruptcy Case. *See In re Antol Restoration, Inc.*, 444 B.R. at 486-87 ("[C]ourts interpreting the phrase 'timely adjudication' have 'not focused primarily on when the case would be tried but rather on whether allowing an action to proceed in state court will have any unfavorable effect on the administration of a bankruptcy case.'"). Therefore, mandatory abstention does not apply. Here, the essential element of Teh's damages (his investment money) is allegedly in The Lake Law Firm's possession. As such, Teh cannot carry his burden to show that the state court is capable of timely adjudicating this action without "an unfavorable effect on the administration of" The Lake Law Firm's bankruptcy estate—given that his money is with The Lake Law Firm. *See In re Antol Restoration*, 444 B.R. at 486-87; *Brown*, 2006 WL 8433366, at *3.

In sum, because (1) these cases involve, among other things, core proceedings and (2) Teh has failed to carry his burden to show the state court can timely adjudicate this action without having an unfavorable effect on the administration of The Lake Law Firm's bankruptcy estate, mandatory abstention does not apply. *See id.*

**D. The Factors for Discretionary Abstention Weigh Against Abstention**

Discretionary abstention is inappropriate here because, as discussed above, the four consolidated Teh cases involve core proceedings because they involve Teh's investment money, which he claims is with The Lake Law Firm—and the Bankruptcy Court must determine whether those funds are property of the bankruptcy estate. Indeed, "core matters . . . are rarely subject to permissive abstention under Section 1334(c)(1) or equitable remand because of their central role in a bankruptcy case." *In re British American Ins. Co. Ltd.*, 488 B.R. at 234 n.28. That fact, in addition to the strong interests in claim centralization, judicial economy, efficiency in adjudicating related proceedings, and the conceivable effect a judgment in these actions will have on the bankruptcy estate weigh in favor of denying permissive abstention. *See Brown*, 2006 WL 8433366, at *3; *In re Antol Restoration, Inc.*, 444 B.R. at 488-89.

In addition, discretionary abstention does not apply because: (1) Teh's claims are governed by Florida law, and no complex state-law issues require state-court resolution; (2) Teh has already filed four related actions based on the same core facts and now seeks partial remand that would further fracture the litigation; (3) efficiency and judicial economy favor resolving these related matters in the "home" Bankruptcy Court because they are closely tied to the Bankruptcy Case; (4) Teh will not suffer undue prejudice from having his substantially overlapping claims litigated efficiently in a single forum; and (5) Teh has not shown that the state court can timely adjudicate this matter or that litigating substantially similar facts in multiple venues would be more efficient or economical.

**E. The Removals Have An Objectively Reasonable Basis So Awarding Attorneys' Fees Is Improper**

The Court should not award Teh attorneys' fees because, as discussed above, removal of the four consolidated Teh actions to this Court was proper because they involve core proceedings

15

and are "related to" the Bankruptcy Case. *See* 28 U.S.C. § 1447(c); *Norris v. Brady*, 668 F. Supp. 3d 1257, 1268 (S.D. Fla. 2023) (denying § 1447(c) fee request where removal was proper); *Scott v. Walmart, Inc.*, 528 F. Supp. 3d 1267, 1279 (M.D. Fla. 2021) (denying fee request because removing parties had objectively reasonable basis to believe removal was proper). Teh cannot be awarded attorneys' fees because Benito had an objectively reasonable basis for removing these cases to this Court based on the fact that The Lake Law Firm became the debtor in the Bankruptcy Case; Teh's own allegations against non-debtor Defendants are inextricably intertwined with The Lake Law Firm and non-debtor Defendants; Teh's claims involve core proceedings; and his claims against non-debtor Defendants are at least "related to" the Bankruptcy Case. *See Norris*, 668 F. Supp. 3d at 1268; *Scott*, 528 F. Supp. 3d at 1279; *Clegg v. Bristo-Myers Squibb Co.*, 285 B.R. 23, 38 (M.D. Fla. 2002) (remanding case but denying motion for fees because removal was "not without some basis in law").

Finally, Teh's suggestion of gamesmanship is unfounded. The Lake Law Firm's creditors sought Bankruptcy Code protection for The Lake Law Firm. *See In re Law Offices of Edward J. Lake, P.C. d/b/a The Lake Law Firm*, No. 8-25-74584 (LAS) (Bankr. E.D.N.Y.) (ECF Nos. 17 (Order for Relief); 18 (Notice of Appointment of Chapter 7 Trustee)). Moreover, The Lake Law Firm's own voluntary bankruptcy petition, which it filed after the Bankruptcy Case was initiated, confirms that The Lake Law Firm's creditors did not manufacture a need for bankruptcy proceedings. *See In re The Law Offices of Edward J. Lake, LLC d/b/a The Lake Law Firm*, No. 8-25-74647 (LAS) (Bankr. E.D.N.Y.) (The Lake Law Firm's voluntary chapter 11 case, which was dismissed).

## V.     CONCLUSION

For all these reasons, Benito asks the Court to: (1) transfer these cases to the United States

District Court for the Eastern District of New York, where they will be automatically referred to the Bankruptcy Court, which is in the best position to assess Teh's Motions, (2) alternatively, deny Teh's Motions in full, and (3) grant her all other appropriate relief.

Dated:  January 23, 2026            Respectfully submitted,

           **BREWER, ATTORNEYS AND COUNSELORS**

           /s/ *Hector J. Montalvo*
           Hector J. Montalvo, Esq.
           Florida Bar No. 887056
           hjm@brewerattorneys.com
           1717 Main Street, Suite 5900
           Dallas, Texas 75201
           Telephone:  (214) 653-4000
           Facsimile:  (214) 653-1015

           *Counsel for Defendant Sylvia Benito*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 23, 2026, the undersigned counsel electronically filed the foregoing document with the Clerk of Court using the CM/ECF system.

Dated: January 23, 2026                    Respectfully submitted,

                                           **BREWER, ATTORNEYS AND COUNSELORS**

                                           /s/ *Hector J. Montalvo*
                                           Hector J. Montalvo, Esq.
                                           Florida Bar No. 887056
                                           hjm@brewerattorneys.com
                                           1717 Main Street, Suite 5900
                                           Dallas, Texas 75201
                                           Telephone: (214) 653-4000
                                           Facsimile: (214) 653-1015

                                           *Counsel for Defendant Sylvia Benito*

18